# DECISIONS

OF THE

# Court of Appeals of Kentucky

## SPRING TERM, 1917.

### Pickrell & Craig Company, et al. v. Castleman Blakemore Company.

(Decided February 13, 1917.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Reformation of Instruments — Equity — Jurisdiction. — Courts of equity have exclusive jurisdiction to reform written contracts.

2. Reformation of Instruments—Pleading.—A petition in an action for the reformation of a written contract is bad, on demurrer, if it does not set forth material facts in clear and concise language.

3. Reformation of Instruments—Fraud or Mistake.—When there is no fraud or mistake in the preparation of an instrument, and it appears that the party signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept.

4. Reformation of Instruments—False Representation—Frauds.—A false representation as to the law, without any misrepresentation or concealment of fact, does not amount to fraud, if there is no relation of trust and confidence between the parties.

5. Reformation of Instruments—Evidence.—Statements, that it was not necessary to incorporate the omitted terms in a written contract; that to do so might make the contract illegal, and that the omitted part of the contract would be observed and carried out, are not, in the absence of a relation of special trust and confidence, sufficient to support an action for reformation of a written contract.

DUFFIN, SAPINSKY & DUFFIN for appellant.

PRYOR and CASTLEMAN, and DAVID R. CASTLEMAN for appellee.

Opinion of the Court by Judge Clarke—Affirming.

Appellant was the plaintiff below and we shall so refer to it, and we shall refer to appellee as the defendant. On December 23rd, 1910, plaintiff purchased from defendant, three adjoining pieces of property, situated at No. 129 North Second Street, in the city of Louisville, for the sum of $54,000.00, in evidence of which transaction the following written contract was executed:

"Louisville, Ky., Dec. 23, 1910.

"Jones Bros., Castleman & Blakemore, City.

"Gentlemen:—The Board of Directors of this company has authorized the purchase of the following property upon the terms hereinafter set out:

"No. 1. Lot on Second Street between Washington and Water, being 48½x190 ft., immediately adjoining on the north the office building of Belknap & Co.

"No. 2. Immediately in the rear of lot No. 1, and being 24x90 ft., bounded on the east by Sneeds Street and on the west by an alley.

"Lot 3. Lot 48x190 ft., fronting on Second Street and immediately adjoining on the north lot No. 1, and extending to the property of the Illinois Glass Company.

"All of said property being that purchased by you from Torbitt & Castleman and to include all improvements thereon, together with switching privileges and other appurtenances pertaining to the ownership of the same. You shall have the privilege of removing all machinery, equipment and furnishings now in the buildings. You shall leave the same in good tenantable condition for storage purposes.

"For this property we will pay $54,000.00 for a merchantable title and warranty deed, said payment to be $20,000.00 in cash and the balance in our promissory note due in four months for $4,000.00 and the assumption by us of notes for $30,000.00 secured by a lien on the above property.

"We will further assume the payment of 1911 city, state and county taxes.

"It is a further condition of this proposition that you assign to this company any fire insurance now in force upon the above property free of any cost to this company.

"You shall surrender possession of buildings not later than May 1st, 1911, and as much sooner as you can, and you shall pay rent at the rate of $350.00 per month for the time same is occupied by you.

"PICKRELL & CRAIG Co., INC.
"OTIS W. PICKRELL, Pres.
"E. K. TULEY, Asst. Secy.

"Accepted:
"JONES BROS., CASTLEMAN & BLAKEMORE,
"By G. C. JONES, Prest.,
"M. BLAKEMORE, Secy."

Within a short time, this contract was executed and its every provision performed to the entire satisfaction of all parties.

On the 24th day of November, 1914, nearly four years thereafter and after defendant had demanded a dividend due it upon stock it owned in plaintiff corporation, plaintiff brought this action against defendant for the breach of an alleged verbal contract whereby defendant is alleged to have agreed to store goods with the plaintiff, the charges upon which should amount to not less than $2,500.00 per year, until the total amounted to $54,000.00, and to make plaintiff the exclusive selling and distributing agent for defendant in certain designated cities. Upon a trial, plaintiff recovered a judgment for $4,157.33, which, upon appeal, was reversed by this court, in an opinion reported in 163 Ky. 750.

The written contract above referred to was not mentioned in the pleadings of either plaintiff or defendant, and the case went to trial in the lower court upon the breach of the verbal contract referred to above, as though it were an independent contract. In the course of that trial, it developed from the evidence, that the alleged verbal contract, if ever made, was a part of the written contract for the sale of the real estate at No. 129 North Second Street, Louisville. This court, holding that plaintiff could recover only if the verbal contract was omitted from the written contract by fraud or mistake, reversed the judgment of the lower court, and remanded the case, with directions to permit plaintiff to amend its pleadings, if it so desired, in order to seek a reformation of the written contract so as to include the alleged verbal contract, the breach of which was asserted, and to recover, in the same action, for any breach established.

Upon the return of the case to the lower court, to conform with the opinion rendered by this court, plaintiff filed an amended petition, to which a demurrer was sustained, and another amended petition, to which a demurrer was, likewise, sustained, and, declining to plead further, its petition, as amended, was dismissed, and from that judgment it has prosecuted this appeal.

1. When plaintiff filed its first amended petition, upon the return of the case, seeking to set up a cause of action for the reformation of the written contract, a motion was made by defendant to transfer the cause from the ordinary to the equity branch of the Jefferson Circuit Court, which motion was sustained, over the objection of plaintiff, and that is the first error relied upon for a reversal here. Since the cause of action which was attempted to be asserted by plaintiff, after the amended petition had been filed, was for the reformation of a written contract, it is clear that it was not error to transfer the case from the ordinary to the equity docket, since courts of equity have exclusive jurisdiction to reform written contracts. McMee v. Henry, 163 Ky. 729; Worley v. Tuggle, 4 Bush 168; Pomeroy's Eq. Jurisprudence, sections 170 and 171.

2. The remaining question is, whether or not plaintiff's petition, as finally amended, states a cause of action. It was held in the former opinion in this case, that, by reason of the fact that the written contract does not appear to be ambiguous or incomplete on its face, but appears to be full and complete in every particular, plaintiff's case depends upon whether or not the oral agreement relied on was omitted from the written contract by fraud or mistake. As we have heretofore stated, it is only courts of equity that will reform a solemnly executed written obligation, and the rule is, that before such relief will be granted, some inequity or imposition, the result of fraud or mistake, must be made to appear, by the clearest and most convincing proof, and that, in pleading a cause in reformation, material facts must be set forth in clear and concise language. Lindenberger v. Rowland, 158 Ky. 760; Ferguson v. Akers, 165 Ky. 289; Cook v. Day, 168 Ky. 282.

The amended pleadings, by which plaintiff attempted to plead a cause in reformation, upon the ground of fraud or mistake, are quite lengthy, and we do not deem

it necessary to set them out in full, but we shall state the substance of the allegations made.

After setting up, in terms, the written contract copied above, and that part alleged to have been omitted, and alleging that the verbal contract with reference to the warehouse and agency provisions, and the written contract, were parts of one entire contract, plaintiff alleges that the alleged verbal part of the contract was omitted from the written one as a result of, either the mutual mistake of both plaintiff and defendant, or same was a mistake upon the part of plaintiff and fraud or inequitable conduct upon the part of defendant; that the written contract was prepared by counsel for defendant; that plaintiff, before it executed the written contract, objected to same as set forth in the writing, inasmuch as same failed to set forth, and omitted, that part of the agreement between plaintiff and defendant to the effect that defendant was to appoint plaintiff its exclusive selling agent for Louisville and tributary points and to place on storage, exclusively with it, at its warehouse at No. 129 North Second Street, Louisville, defendant's goods, wares and merchandise in Jefferson county; that plaintiff protested that said writing did not contain the full, true and actual agreement between the parties, and requested of defendant, that the entire agreement be inserted in the writing; that thereupon the defendant, through its chief officers and counsel, informed and assured plaintiff that there was no necessity for putting the warehouse and agency part of the contract in the writing, that it might not be legal so to do, and might avoid the entire agreement, that the writing contained all of the contract necessary and that the omitted part of the contract would be observed, without the writing containing same; that plaintiff, relying upon these statements and assurances by defendant, withdrew its objection to the writing, and signed and delivered same; that, also relying upon these statements and assurances, plaintiff permitted defendant's counsel to prepare minutes of plaintiff's board of directors, approving and ratifying the contract as contained in the writing; that if it had not been for the statements and assurances of defendant, concerning the omission of the agency and warehouse part of the contract, plaintiff would not have executed or delivered the contract; that defendant, at the time it made the state-

ments that it was not necessary to include in the writing that part of the contract with reference to the agency and warehouse agreement, and gave to plaintiff the assurance that the omitted part would be observed and carried out, well knew that such statements and assurances were false, and made them for the express purpose of overreaching plaintiff, and to procure its execution of the written contract; that plaintiff did not know the falsity of these statements and assurances, nor could it have discovered same by ordinary diligence.

It will be noticed, first, that plaintiff pleads fraud or mistake, in the alternative, yet it alleges that it knew of the omission at the time the contract was executed and, notwithstanding this knowledge, executed and delivered the contract. It is, therefore, apparent, that plaintiff did not state a cause of action for reformation of the contract on account of the omission of the part of the real contract by the mutual mistake of the parties. The omission was recognized, discussed and consented to; so there was no mistake of fact involved. Nor is any mistake of law alleged, as it is stated in that respect, only, that defendant said, to include the omitted provisions *might* make the contract illegal, which is clearly no more than a statement of opinion, and not a representation of what the law was in reality; and construing the statement of defendant, that it was not necessary to include the omitted part, more strongly against the pleader, as must be done, this is not a representation of law at all, for the more reasonable construction of the meaning intended, when considered in connection with the promise to observe the omitted parts is, that defendant assured plaintiff that it was not necessary to include the omitted parts in order to secure an observance of them, as defendant would observe them anyway, rather than that defendant meant thereby that, in order to bind it legally, only the verbal understanding was necessary in law. In other words no mistake of law or fact is alleged in clear and concise language.

So we need only to examine plaintiff's pleadings, to see if facts were alleged, which constitute fraud. It will be noticed that plaintiff alleges only, that defendant made statements and assurances, by which it was induced to consent to the omission, to the effect that it was not necessary to incorporate the omitted parts in the

writing; that to do so might make the contract illegal, and that the omitted part of the contract would be observed and carried out, just the same as if included in the writing. In what way, then, were these statements and assurances fraudulent? There was no misrepresentation of any fact or law alleged. The only allegation of misrepresentation is, that defendant, knowing that it was untrue, told plaintiff that it was not necessary to reduce a part of the contract to writing, and assured it that the omitted terms would be observed. These parties were *sui juris,* dealing at arm's length, occupying no confidential relationship toward each other. The allegations, then, upon which plaintiff attempts to base a right of reformation are, simply a promise to perform the omitted obligations. This does not constitute fraud. In 34 Cyc. 922, it is said:

"When there is no fraud or mistake in the preparation of an instrument, and it appears that the party signing understood its language and purport, it cannot be reformed on the faith of a contemporaneous oral promise which was not kept."

In a note in Ann. Cases 1915B, page 1143, the rule is stated thus: "It is well settled, that a false representation as to the law, without any misrepresentation or concealment of fact, does not amount to fraud if there is no relation of trust and confidence between the parties." To the same effect are 14 Am. & Eng. Encyc. of Law, 2nd Ed., page 54; 20 Cyc. 19; 12 R. C. L. 295; 2 Addison on Torts 422. It would, therefore, seem clear, that plaintiff's petition, as amended, failed to state facts constituting fraud or mistake, and that the demurrer was properly sustained.

Counsel for plaintiff relies upon the case of Meacham Contracting Company v. City of Hopkinsville, 164 Ky. 703, and the case, cited therein, of Coger's Exrs. v. McGee, 2 Bibb 321; but in neither of these cases were the facts analogous to the case involved. In the Meacham case, this court recognized and applied the rule, as herein stated, upon the ground that the rule should be strictly enforced, where a municipality was a party to the contract sought to be performed, and stated, in the course of the opinion, that if the contract were between private individuals, involving private rights, the rule would be different, and that in such cases, the rule laid

down in Cogers' Exrs. v. McGee, *supra,* would be followed; in which case it is stated:

"For a party either to produce a mistake, or prevent it from being rectified, under the declaration that he would observe the understanding of the parties as verbally expressed and requested to be inserted in the writing, and afterward attempt an advantage from its omission in the writing, is fraudulent and ought to be relieved against."

It is freely admitted that this statement, and others, made in the Coger v. McGee case, and copied therefrom in the Meacham case, if a correct statement of a principle of law of universal application, would support plaintiff's contention; but these statements, made with reference to the facts then before the court, and, true with reference to those facts, are not, in our opinion, true with reference to the facts before us. In the Coger v. McGee case, there was a mistake, made by the draftsman, with reference to the terms employed in the contract. While the parties to that contract recognized the fact that it did not express, in explicit terms, a part of the contract, both parties, when they executed the contract, agreed that technical terms, employed by the penman by mistake, did express their entire contract and should be so construed, and, the agreement to so construe the words having been violated by the party who had assured the other that they would be so construed, and thereby procured the execution of the contract, the court held, parol evidence was admissible to show the agreement between the parties as to the effect that should be given the words therein used, and, that it would work a fraud to permit the party whose representation to so construe the contract had induced the other to execute it, to repudiate his agreement as to the effect to be given these words. In neither the Meacham nor the Coger case was the rule applied, except in the latter case to relieve from the terms embodied in the contract, and when so applied we see no objection to it, but to apply it to incorporate into the contract a provision intentionally omitted, upon the simple promise that it would be performed, is not warranted, by the great weight of authority. In a note to section 854 of Pomeroy's Equity Jurisprudence, 3rd Ed., it is said:

"Where a verbal stipulation is made at the same time as the written contract, and is omitted intention-

ally on the faith of an assurance that it shall be as binding as though incorporated into the writing, the rule as generally settled does not permit such provision to be proved and enforced. It is said that, there being no fraud or mistake, to allow the verbal terms to be proved by parol evidence, and the written agreement to be varied, would be a violation of the statute of frauds, and would introduce all the evils which the statute was designed to prevent. The relief given in cases of fraud and mistake stands upon different grounds; although *appearing* to conflict with the statute, it is really carrying out the ultimate purposes of the legislature by preventing injustice. No such grounds, it is said, exist where parties have intentionally omitted provisions from their written agreements. (Citing numerous authorities). There are cases, however, which seem to reject this conclusion, and allow the verbal stipulation to be proved and enforced, and the written agreement to be reformed, on the ground that the refusal to abide by the whole agreement, and the attempt to enforce that portion only which is written, constitute a fraud which equity ought to prohibit.'' (Citing authorities, among which is the case of Coger's Exrs. v. McGee). But, as we have seen, the facts of that case are not similar to those presented now. In the case at bar, there was no agreement or understanding that the written contract, in any way, expressed, covered or dealt with the portion alleged to have been omitted, but the attempt is made to incorporate in the written contract other, additional, contemporaneous agreements, entirely ignored by the contract, simply because defendant said that it was not necessary that these provisions be incorporated therein and promised that they would be observed. Convinced that the statements of law referred to in the Coger v. McGee opinion and repeated in the Meacham case, while true under some conditions, are not applicable to the case at bar, we cannot be bound by those statements.

For the reasons indicated, the judgment is affirmed.